Good morning and may it please the Court. My name is Neil Cooper. I am here on behalf of the appellants. We're here to correct the Bankruptcy Appellate Panel's erroneous statements of what the law is and conclusions of law, and those fall into two camps, the discharge injunction and emotional distress damages. In this case, the debtors contend that appellants, who are fully secured creditors having a first position lien against their real property, failed to credit their plan payments as required by the plan in violation of Section 524I. The BAP erroneously concluded that the failure to treat the loan as current following the bankruptcy was itself sufficient to establish that there was a failure to credit payments. The BAP did not cite any authority for this proposition. It did not engage with any of the authority that appellants cited that says a secured lien passes through unaffected and neither the plan nor a proof of claim, an erroneous proof of claim, changes the amount that's due on the lien. It might change the amount that the creditor gets paid through the bankruptcy plan. It might affect how the creditor can act during the bankruptcy. Obviously, the creditor cannot go in violation of the plan, but once you exit the bankruptcy on the other side, the lien continues to secure all sums due regardless of whether what happened during the bankruptcy. And so in its holding, to the contrary, the BAP didn't cite any authority and in effect it overruled the cases we cite. We cite a number of cases in both our opening and reply brief supporting this point. The predominant case we rely on is In re Broaders, which the appellees also do not address. And the BAPs. What role does Marino play in this case? As to jurisdiction, your honor? Yes, because that was on the merits here. We're hearing a motion to dismiss. This is an odd procedural posture. I believe your honor was on the Berrientos panel where they said, hey, discharge injunction should not be prosecuted through an adversary proceeding. It is a motion for contempt. So already we're here on an odd procedural posture. But to get to it, there are either two tests. It's a two part test, which there's finality where it resolves and seriously affects the substantial rights of the parties and finally determines the issue. And we think we're in that camp because we're here on matters of law. It decided, OK, here is what the law is. It's not In re Broaders. It is you must treat the loan as current coming out of the bankruptcy. Emotional distress damages as a matter of law are available. So it's not a factual issue that we have in this case, but one under the two part test would be our first position. If we do the four part test to avoid piecemeal litigation, judicial efficiency, interest in preserving the bankruptcy court's role as finder of fact and whether it would cause irreparable harm, we think we still get here and the court has jurisdiction. And counsel also agrees that this court has jurisdiction because, again, we're addressing pure issues of law that finally determined the action. And so we believe whichever test the court wants to go under, the court has jurisdiction and counsel agrees. So I don't think that In re Merino really has any effect on this. I think the court can say, yes, we have jurisdiction. We should get to these issues that need correction. And getting back to kind of the BAP going against In re Broaders, that had two notable effects. First, it absolved debtors from having to articulate when and how creditors failed to credit a plan payment. While they make conclusory statements that essentially just track the language of the statute saying they failed to apply payments as required by the plan, they never identified any. In dismissing the second vending complaint, the bankruptcy court said they did not identify any, and that was 2 ER 195. And so the erroneous statement of law kind of absolves them from this. And, you know, had this been brought in the procedurally proper manner, they would have had to show by clear and convincing evidence that the order was violated had this been a motion for contempt as opposed to an adversary proceeding. And kind of this conclusory assertion that was made within the second vending complaint would not get there. And so the BAP sort of cut us off at the knees there. The second effect of the BAP saying, ignoring In re Broaders, and saying you must treat the loan as current, is that we effectively lose the fair ground of doubt safe harbor from Taggart. So our, as we've stated in our brief, look, even if we were wrong, our understanding of In re Broaders, the applicable law at the time, says we could go after all amounts secured by the lien. And if the BAP's not even going to say, hey, In re Broaders doesn't apply for this reason, just ignored it, we're off in some other area of the law where we don't even know if we can rely on In re Broaders in order to avail ourselves of the no fair ground of doubt safe harbor. The other issue with the discharge injunction is that the BAP said, found as a matter of law, based on the discharge, yes, the debtors had in fact completed their plan timely. That is contrary to the record, and it's contrary to the second vending complaint, which says they were still through September 2019. And as we've pointed out, the record shows that their second modified plan said we're going to pay $6,000 in June and $3,000 something for the rest of the plan, and they underpaid June by a significant amount, and then they didn't pay after March 2019, and then, you know, in September, they finally go ahead and pay the back money that's owed. And both the BAP and the bankruptcy court cite the law that says, hey, once the 60-month plan has run, that's an incurable default. You cannot complete your plan after 60 months. And so we think that those two errors by the BAP with regard to Section 524i, both in misstating that the loan had to be current following the bankruptcy, and then saying as a matter of law, they must have timely completed their payments, are both reversible. Can you address the emotional distress damage, well, I say damages, I mean, award, I guess, under the contempt proceeding. Can you flesh out for me how much of that, the sanction, and how much of it was attributable to emotional distress? Did they split it up that way? So we never got there. The bankruptcy court said you did not violate 524i, and also emotional distress. Because the BAP just reversed that and said... They are available. Yeah. But within the complaint, original complaint requested $350,000 of damages plus $3.5 million of punitive damages. That's 5ER979. And the punitive damages isn't before us at all, right? Right. And under NRA Dyer... But the emotional, I mean, I guess, so the sole question before us is whether, on this point, is whether emotional damages fit within the contempt sanction. Correct. And we dispute that the BAP should have ever reached emotional distress. We don't consider it to have been properly raised to them. In, I apologize, the opening brief said that there was no mention of emotional distress in their brief to the BAP. I overlooked three sentences where they said emotional distress damages should have been awarded. But there was no authority for that. There was no further argument. This gets into an interesting question. I guess, now that we're talking about this, it kind of circles back to the jurisdictional point a little bit. Because why are we trying to decide this esoteric issue when we don't even have... I mean, it's possible. It's entirely possible that you, you know, all the BAP said was they're available. It's entirely possible that you go back and the bankruptcy court says there are no emotional distress damages, in which case we wouldn't have to decide the question, I guess. Well, at that point, the court would have to, the bankruptcy court would say the BAP has opined that these are an element. And now I get, you know, must find whether or not they exist in this case. Our point is, is that as a matter of law, and as the bankruptcy court found, emotional distress damages are not available as a matter of law post-Taggart. Right. But my point is, why are we deciding that? That does give this a flavor of an interlocutory appeal in the sense that we're deciding a legal question that has never been practically applied in the case. That's just different in the bankruptcy world. Is that what I mean? This isn't, let's put it this way. This is not final in the 1291 context. And I understand you don't have to be in the 158 context, but I'm trying to figure out why this is efficient for us to decide this. I mean, maybe the reason is because there is a split on this. You would agree with that. It seems like there is a split on this in the district courts and the bankruptcy courts on whether emotional distress damages are available. I mean, that counsels to deciding the issue, but I still don't understand why. I mean, if emotional distress was never an issue in the case, then why would we even, and we don't know that yet, then why would we step in and decide this question? It was an issue in the case because in addition to the 524 discharge claim, they brought intentional infliction of emotional distress claim. And so, well, yeah, but that's separate. I mean, because that would come outside of the content. I mean, I thought we were looking at emotional distress in the context of a contempt order. Correct. And so... But there's a separate claim, but that's not before us at all. There's a separate claim that is entirely premised on 524. So... Oh, I see. So the question is whether... And so if, and the courts, bankruptcy court had supplemental jurisdiction or jurisdiction over these state law claims at the time it ruled, and it decided IAED first, and it said, look, emotional distress damages are never available under 524I. So your IAED claim necessarily fails as a matter of law. And also I'm going to dismiss the 524I claim because it wasn't properly, because you're in default and you haven't properly pled it. So there are two claims that were, resulted in a final dismissal. One of them being IAED and the court's holding on emotional distress is directly central to dismissal of that claim. And I'd like to reserve the remainder of my time if there's... Your Honor, Mark Wolf appearing on behalf of Melania and Ellen Valdelan, the debtors and appellees here. Your Honor, we're here because, simply because PHH disagrees with the result of the Chapter 13 plan. PHH argues this Chapter 13 case, after the case is completed and discharges entered, if they disagree with the result, they can simply collect whatever additional amounts they claim is owed, and that they claim that the trustee underpaid for pre-petition arrears and ongoing monthly payments. Even in a case as here, where they agreed with the trustee that all pre-petition arrears were paid and ongoing payments were made. Their position that they may maintain essentially a separate accounting, separate from the bankruptcy because they have a lien. And there they support that claim with In re Broaders. Broaders has nothing to do with a Chapter 13 case involving 1322B5, the cure and maintain provision, or 524I. In Broaders, the bankruptcy appellate panel looked at the language of the Chapter 13 plan to determine whether or not that plan fairly gave notice to the creditor that they're attempting to avoid a lien or in some effect their lien in some way. That's not the case here. This case, the debtors proposed a plan that had very specific language regarding the treatment of the claim, how the creditor was to credit payments under the plan. And at the end of the plan, after the debtors had completed, the trustee sent out a notice. They were given an opportunity to object and say, no, the plan has not been completed. They were given an opportunity to disagree with the trustee that pre-petition arrears were paid and ongoing payments were made. And rather than disagree, they agreed with the trustee. They also acknowledged the direct payments from the Valdolans, showing that they, at the time in October of 2019, that the debtors were current in post-petition payments through and including October. Can you, I mean, do you, what's your position on our appellate jurisdiction here? Your Honor, this is difficult. I argued that there was jurisdiction in our brief. I actually read the recent case by the Supreme Court, the GEO versus Menocal, which came out last week that discussed immunity versus a defense. And they seem to be clear that the rejection of a defense typically does not give jurisdiction to the appellate court. If it was immunity. Well, but that wasn't a bankruptcy case. It was not. No. No. I mean, it seems to me that this, we're looking at 158, appellate jurisdiction on 158, which is a different analysis. But I would have, I kind of came in thinking, well, we probably have jurisdiction here because there was no remand for factual finding. Do you agree with that, that there's no remand for factual finding? Your Honor, there were no factual findings prior to this case going on appeal. And so there were no remand for factual findings on certain issues, but there was a remand to continue with the case. I believe that. Should we wait then? I mean, should we say there's no jurisdiction to wait? And one of the reasons I'm now starting to question that is the emotional distress damages hasn't even been decided. So are we jumping the gun by sort of addressing this legal issue that I guess in a way is sort of remanded for factual findings on whether there's whether there's emotional distress damages and whether that is appropriate as a contempt award here. Your Honor, from my client's perspective, we really do not want to have to come back here to decide these same issues of law when there is really no issue relating to the facts that is going to change. The facts are clear in this case about the filing of a Chapter 13 plan. I guess your point is even if emotional distress damages were not awarded as part of contempt, one or the other party is going to be up here challenging it. And so that issue has been, I mean, the issue of whether they're awardable has been finally determined by the BAP and we should take that pure legal issue up at this point. That's correct. So if that's the case, why are emotional distress damages? I got to be honest. I read the bankruptcy court opinion on this and I thought it was pretty compelling on the history of and after Taggart in the bankruptcy court ruled after Taggart, the history of of contempt proceedings did not normally include non-pecuniary damages, if you will, or remedies including emotional distress. Now, the BAP disagreed with that because it said, well, we got to look to this 2017 case that we have. Sorry, I'm forgetting the Silas or I can't remember the name of the case now. But that seems to be a little bit inconsistent with Taggart. So tell me why the BAP got this right post-Taggart. Your Honor, the BAP did get this correct because they were looking. In Ray Moreno was the case. Looking historically, not only with respect to orders and contempt orders and enforcement of by the bankruptcy court, but by the district court as a whole, which is where the bankruptcy court gets its power. There are a number of instances in back into 1870s where courts enter orders that attempt to compensate those who are injured by those who violate their orders, including a case where, you know, debtors were given damages, where they were, their family was kicked out of a house on a warm, excuse me, on a cold winter night. Yeah, but that seems to be a pecuniary, that seems to be a pecuniary loss, I think. Well, I think they're talking about the damages that are sustained, not just the money that they're out, but, you know, the discomfort and the... Exactly. And, you know, we can extend this even further to other types of cases where someone is given a restraining order for violence and, you know, someone is certainly going to be scared if somebody violates that type of an order and may be entitled to be compensated for that. Frankly, I think that taking emotional distress off the table simply guts the court's ability to enforce its orders. There's no reason to... Really? Really? I mean, you think that the only reason that they can enforce the order is because emotional damages are available? I mean, I guess I asked the question too prematurely because none have been awarded, but I got to believe it's going to be a small percentage of whatever the contempt award would be in this case. I mean, I just don't see how it's... Well, it doesn't seem to me, that doesn't seem to be your best argument that, oh, well, now everybody... If you can't get emotional distress awards, then nobody's going to comply with the court order. Your Honor, it's going to be difficult and it's going to be difficult for the course to actually make a debtor whole when a creditor violates the discharge injunction because part of that discharge injunction, the reason for the discharge injunction is to give those debtors peace of mind that they won't have to deal with these harassment of creditors after the bankruptcy case is over, especially in a case like this where the debtors, prior to the filing of the bankruptcy case, they had a dispute about how much was owed. I mean, part of the problem I see with that argument is there still is discretion. I mean, the district court or the bankruptcy court would be able to award contempt damages that deter this from happening. I just don't know why you have to put it under an emotional distress bucket. That's what I'm trying to grapple with. Your Honor, because there are a number of ways we could phrase it. There are a number of ways we could calculate what kind of damages that the debtors have sustained in a case like this. Emotional distress is just one of those, and there's no reason to exclude that. Prior history shows that emotional distress damages were available prior to the enactment of the Bankruptcy Act in 1978 as well as prior to the enactment of Section 524I. Again, I think here, PHH has decided that it simply is not bound by the plan, and I didn't get into too much into Broaders, but Broaders is a different case. It does not deal with Section 1322 or Section 524I. It's not applicable here. Your Honor, if we were to follow PHH's argument that they are simply not bound by a Chapter 13 because they have a lien, we might as well put a sign over the door that says, I'm sorry, Your Honor, I might take one second. We might as well put a sign over the door that says, abandon all hope ye who try to use 1322B5 to cure their mortgage arrears and 524I to enforce that because the lien on property is not the issue. In this case, the language of the is collecting amounts that it alleges was underpaid by the trustee for pre-petition arrears and for post-petition payments, and it had a number of opportunities to address that issue. It could have amended its claim. They could have objected to their claim. They could have supplemented their claim. They could have objected to the trustee's final report. They could have responded negatively instead of affirmatively that the trustee cured the arrears and post-petition payments. So we got all the way to the end. We have a discharge order, and that has to have some finality to it. Those matters which were necessarily resolved in the Chapter 13 should not be free for the creditor to come back and dispute and reopen the bankruptcy case. And here we are five years later. The debtors could have done a whole other Chapter 13 plan and cured those arrears all over again instead of going through all of this litigation. But five years later, here we stand, still fighting about whether or not the Chapter 13 meant anything. How much is at issue at this point? I'm sorry? How many dollars are at issue at this point? The numbers have varied. Actually, there was a nice chart that I made in my brief to the BAP, but the dollar amounts that were alleged to be in arrears on the monthly statements varied from approximately $6,000 to $9,000, in some cases $12,000. And that is the amount that was what resulted in a foreclosure proceedings. Got it. Thank you. Any further questions, Your Honor? No, thank you. We'll give you time for rebuttal. To address some of the things that were raised, the specific language of the plans was that the creditors would retain their lien in full. There was no attempt to bifurcate or strip or do anything with the lien. And so it was not apparent on the face of the plan that there was supposed to be anything happening to the lien, other than they were going to be making some payments and creditors retained their lien in full. Counsel, did you ever bring to attention the bankruptcy court, the alleged arrears under payments on the monthly payments? That was not brought to the attention of the court, no. Why? I was not counseled during that, I cannot say. And from what I've been able to gather, those would be privileged conversations. I'm sorry. Counsel raised a case, elderly or an old case, excuse me, of damages relating to the family being put out on a cold night. Robbins v. Frazier, that's at page 32 of our reply brief, where we distinguish it. And the court there said, in the normal course, the remedy for civil contempt would be, quote, direct pecuniary losses, end quote. However, in that case, the court also went into a civil, or excuse me, a criminal contempt remedy in order to punish the person in accordance with the feelings of the community. And so again, here we are in bankruptcy court, we're limited to civil remedies. And so as that court found, it was, the remedy is direct pecuniary loss. Can you address my question about opposing counsel? How does this really matter at the time when counsel distress is not available? Aren't there a lot of other ways to skin the cat if the bankruptcy court felt like more needed to be done, even in civil contempt? Or would it really have a material effect on how much award was given? I mean, I think so. So, In re dire says that there can be a small amount of extra in order to compel compliance. I think it's set a $5,000 limit. Because it's civil and not criminal. That is correct. Within the amicus brief at pages 25 to 26, they note that emotional distress damages started out relatively small, $50, $500. But then they said... Our emotion is just worth so much more in 2025 now. We are. And they cite cases for hundreds of thousands of dollars and say, quote, these awards can eclipse fees and costs by ratio of two to one or more, end quote. And so that's really sort of, I think, why the amici... It almost makes it like a backdoor. And maybe this is your argument, it's almost a backdoor to start entering criminal awards in a way. Yes. And it was never the intent of, you know, this. It's civil contempt. It is not a private right of action. It's supposed to be a motion for contempt. It's not supposed to, you know, grant this cause of action that would remedy all of the damages. So, in conclusion, we'd ask that the court hold In re broaders to still be the law that the BAP statement that the lien must have been treated as current following the bankruptcy is incorrect. While they ask for leave to amend, presumably to identify payments that were not applied or supposedly were not applied correctly, that would be in vain because the bankruptcy court correctly found that they were an incurable default. So no leave to amend should be given. And finally, we ask that the court reverse the BAP as to emotional distress, either because the BAP should have never taken it up under the party presentation principle, or for the reasons stated in the bankruptcy court's opinion. Okay. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted and that concludes our arguments for this morning.
judges: SMITH, NELSON, Morris